UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Criminal Case No. |
| v. | ) | 12-cr-65-JMH |
| | ) | |
| NICHOLAS COREY GARNER, | ) | |
| | ) | |
| Defendant. | ) | **MEMORANDUM OPINION & ORDER** |

\*\*\*

This matter is before the Court on Defendant Nicholas Corey Garner's Motion for De Novo Review of Detention [DE 314] and the Court undertakes the review of the Magistrate Judge's Order [DE 301] as requested pursuant to 18 U.S.C. § 3145.[1] The Court has carefully considered the motion, looking at the evidence de novo, and concludes that no relief is warranted. Rather, the decision of the Magistrate Judge [DE 301] is affirmed.

In Defendant's Motion, he argues that the Magistrate Judge erred in his determination that there would be no conditions of release which would guarantee the safety of the public and that Defendant would pose a flight risk. In an unsworn statement, Garner takes issue with United States Secret Service Special

---

[1] The Court has also received a letter from Defendant Garner, dated November 14, 2013, in which he sets forth a number of concerns. Since Defendant is represented by court-appointed counsel, the Court will not consider further the requests for relief in that letter. His concerns are properly presented to the Court through materials prepared and filed by counsel.

1

Agent Allen Lowe's assessment of the threats that Garner allegedly made to his prior counsel, Attorney Mary Ann Leichty. At the detention hearing before the Magistrate Judge, Agent Lowe testified from the report concerning that incident and prepared at the Grayson County Detention Center where the relevant meeting between Garner and Attorney Leichty occurred.

The Court declines to rely on Garner's unsworn statement in reviewing the Magistrate Judge's Order of Detention. Certainly, Garner has a constitutional privilege against self-incrimination by virtue of the Fifth Amendment to the United States Constitution and was under no obligation to testify at that hearing. Nonetheless, if Garner had wished to present evidence on this issue, he might have done so at that hearing during which the government could have cross-examined any witnesses upon whose testimony he wished to rely, including himself. Further, the Court concludes that the magistrate judge did not err when he relied on Lowe's testimony as to the threat made to Attorney Leichty based on the report prepared at the Grayson County Detention Center, where the incident occurred. Even if the Court assumes that such testimony would not be admissible at trial because it constitutes hearsay under the Federal Rules of Evidence, "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and

consideration information at [a detention] hearing." 18 U.S.C. § 3142(f)(2).

Thus, the Court undertakes the de novo review requested on the record as it exists, including the testimony of Agent Lowe. Having done so, the Court concludes that it was not error for the Magistrate Judge to conclude that there was clear and convincing evidence in favor of detention with respect to the safety of any other person and the community. Nor did the Magistrate Judge err when he determined that detention was appropriate based on the preponderance of the evidence with respect to flight or nonappearance concerns.

According to the evidence at the hearing and available to the Court, Garner has a lengthy criminal history; has been known to carry multiple forged state drivers licenses/identification documents and passports which he either forged himself or obtained from international contacts or ties; engaged in phone calls with co-defendants who are family members – namely Eli Holley, his mother -- in violation of this Court's order; and had other inmates contact Eli Holley on his behalf when he was unable to do so. Having already made veiled threats to his then-attorney, Mary Ann Leichty, which referenced his contracts outside of the detention center where he was housed, he eventually threatened her more directly during a meeting at the Grayson County Detention Center. On June 19, 2013, he

reportedly told her that "[y]ou are not going to be alive much longer. You are going to be dead." Attorney Leichty was, the Court notes, the second attorney assigned to represent him and the second attorney permitted to withdraw because of difficulties encountered in effectively representing Defendant Garner. Both of those attorneys were women, a fact not lost on the Court.

The evidence describes an individual who, prior to his detention, traveled frequently across state lines and who has intermittently lived in Kentucky, Georgia, and South Carolina where he has family, since 1991. The evidence reveals that he committed numerous crimes in several of these jurisdictions over time, including convictions for crimes in Georgia in 1999, 2006, 2009, 2011, in North Carolina in 1999, and in South Carolina in 2007 and 2011, as well as two probation violations committed in 2008.

In that time, he was convicted of charges of lying to a police officer, drug trafficking and possession, battery, failure to maintain motor vehicle licensure, contempt of court, making terroristic acts/threats, reckless driving, and being a pedestrian under the influence of alcohol and drugs. He is currently charged with or awaiting sentencing for a number of criminal charges in Georgia, Tennessee, and Michigan, including forgery, money laundering, criminal simulation, identity theft,

4

reckless driving, and operating a vehicle while impaired. In other words, Defendant Garner has a long history of committing crimes involving falsehoods, drugs, resistance to authority, and some plain, old-fashioned violence and is under current suspicion of having done more.

Considering the weight of the evidence presented, plus the nature and circumstances of the crime charged in the Third Superseding Indictment, and the history and characteristics of Defendant Garner, as well as the nature and seriousness of the danger to any person or the community that would be posed by his release, the Court concludes detention is appropriate considering both risk of danger and flight. *See* 18 U.S.C. § 3142(g). As the magistrate judge described it, "Defendant has a portable lifestyle imbued with criminality." Further, Garner has a history of disregarding the conditions of probation imposed by other Courts. Notably, his arrests and criminal charges from 2011 and 2012 relate to activity which took place while on probation for crimes committed in Georgia. Nor can the Court ignore that, even under careful watch in a detention center, Defendant Garner threatened the life of his attorney – even if it was, as his counsel urges, prompted by an emotional reaction to bad news.

The clear and convincing evidence demonstrates that if Garner is released, he will pose a danger to the safety of other

5

persons and the community. *See* 18 U.S.C. § 3142(b)-(f). The Court concludes that there are no conditions of release which could assure Garner's law abiding behavior and, by extension, the safety of others and the community in the pre-trial period due to his unwillingness or inability to abide by conditions imposed by a court. Considering his past lack of regard for the law and conditions imposed by other courts and his actions which show a serious disregard for the well-being and safety of individuals around him, the Court sees no way to impose conditions which would protect the community in which he resides from further crimes that he might commit or antisocial behavior in which he might elect to participate. There are simply no release conditions or a combination of conditions that can adequately or reasonably assure against the danger posed by Garner to others and the community in this matter.

Even if the Court were to conclude that the potential for danger posed by Garner's release did not justify his continued detention, the preponderance of the evidence also demonstrates that Garner poses a high risk for flight or non-appearance. *See United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006) (unpublished). In addition to the fact that he has maintained multiple residences over a significant period of time, he also has international ties and contacts and

has previously obtained and possessed an authentic but altered foreign passport and the ability to create or assume false identities. The Court reasonably assumes that he still has the knowledge and, perhaps, the ability to obtain, via direct manufacture or otherwise, fraudulent identity documents. The Court considers, as well, his unwillingness to abide by the Court's directive that he have no contact with his co-defendant family members. While the Court recognizes that he could live with his wife and child in Louisville, Kentucky, the fact that his family is willing and ready to take him in is not enough to reassure the Court in the face of the other evidence. Ultimately, the Court has grave doubts about Garner's ability or willingness to respect any condition that could be imposed which would require him to remain within a particular jurisdiction or to appear for trial in this matter. When considered together with the large amount of loss to victims alleged and the potential lengthy sentence of incarceration faced by Defendant Garner if he is convicted of the charges in this matter, the preponderance of the evidence leads the Court to conclude that there is a likelihood of flight and that there is no condition or combination of conditions of release that will reasonably assure Garner's appearance in this matter.

Accordingly, **IT IS ORDERED:**

(1) Defendant Nicholas Corey Garner's Motion for De Novo Review of Detention [DE 314] is **GRANTED IN PART**, insofar as the Court has undertaken the requested review, and **DENIED IN PART**, insofar as the Court declines to order Defendant Garner's release.

(2) That the Clerk shall **FILE** the letter received from Defendant Garner, dated November 14, 2013, in the record of this matter.

This the 6th day of December, 2013.

Signed By:
*Joseph M. Hood*
Senior U.S. District Judge